**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LICINIA M.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | Civil Action No. 25-733 (JXN)<br><br>**OPINION & ORDER** |

**NEALS, District Judge**

Before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), is the application of Plaintiff Licinia M.[1] ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401, *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security ("Commissioner") denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Federal Rule of Civil Procedure 78(b).[2] For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a fifty-four-year-old former data entry clerk. (Compl. ¶¶ 6–7, ECF No. 1.) She was born in Portugal, came to the United States in 1981, and attended high school in Newark through the ninth grade. (Admin. R. at 38, 265.)[3] From 2004 to 2020, Plaintiff worked at Walmart

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] The Court decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1.

[3] Plaintiff reported on Social Security Administration ("SSA") forms that she could not speak, understand, or read English (*id.* at 263), and reiterated this claim at her supplemental hearing (*id.* at 38). But Plaintiff's longitudinal

as a lead warehouse worker, and reported that she supervised up to thirty people full-time. (*Id.* at 41, 265, 288–89.) Plaintiff previously worked as a shift worker completing orders in a warehouse for a company called Bare Web. (*Id.* at 39, 70–71.) This job generally required standing and walking throughout the day, and lifting as much as fifty pounds. (*Id.* at 41.) Plaintiff reported that her job duties changed in 2016. (*Id.* at 266.) She formerly sorted items, walked around picking up items, and did inventory. (*Id.*) From 2016 to 2020, Plaintiff primarily sat at a desk, printing out orders, and handing them to employees. (*Id.* at 266, 598.) Plaintiff's employer accommodated Plaintiff's need to sit down due to her vertigo and gave her data entry work to perform. (*Id.* at 42, 71.) Plaintiff also explained that when she did not feel well, she was allowed to sit down and sometimes she would have to go home. (*Id.* at 72–73.) Plaintiff took weeks off at a time due to her symptoms. (*Id*. at 43.) Plaintiff no longer drove a car. (*Id.* at 37–38.) Her sister, who also worked at the same company, would drive her to and from work. (*Id.* at 43–44.)

On October 13, 2021, Plaintiff filed for DIB, alleging disability as of July 17, 2020, due to left ear deafness, chronic left ear infections, vertigo, eye tremors, chronic migraine headaches, and balance issues. (*Id.* at 236–37, 264.) Plaintiff explained that she stopped working altogether in July 2020, because she became sensitive to movements, which would make her dizzy. (*Id.* at 39, 42, 76.) She became increasingly dizzy around this time. (*Id.* at 44, 76.) Plaintiff explained that when looking at a computer or writing, her dizziness worsened. (*Id.*) Plaintiff reported that she had been treated with Meclizine and received therapy from 2018 to 2021. (*Id.* at 47, 49.) She reported that she did the therapy at home. (*Id.* at 50.)

The New Jersey state agency responsible for making disability determinations on behalf of

---

medical records indicated that she is able to communicate in English and speaks English fairly well. (*Id.* at 387, 546, 598, 610, 617.) Plaintiff can also speak, understand, read, and write Spanish. (*Id.* at 38.)

the Commissioner denied Plaintiff's claim initially in March 2022, and upon reconsideration in July 2022. (*Id.* at 80–102, 109–13, 120–24.) Plaintiff then requested a hearing before an ALJ. (*Id.* at 122.) On September 20, 2023, Administrative Law Judge Brian LeCours ("ALJ") held a telephonic hearing (*id.* at 61–79), which was postponed due to a poor telephone connection, until January 17, 2024 (*see id.* at 79, 190). Plaintiff, who was represented by attorney David Kuznicki, testified with the assistance of a Portuguese interpreter. (*Id.* at 37–50.) Helene J. Feldman, an impartial vocational expert ("VE"), also testified. (*Id.* at 50–60.)

Following the administrative hearings, the ALJ issued a January 31, 2024 written decision, finding that Plaintiff was not disabled within the meaning of the Act. (*Id.* at 17–25.) Thereafter, on November 22, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's January 31, 2024 denial the "final" decision on Plaintiff's October 13, 2021 DIB application. (*Id.* at 1–6.) This appeal followed and is ripe for review.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

Substantial evidence is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *K.K.*, 2018 WL 1509091, at *4 ("[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." (citation omitted)).

Nevertheless, the Third Circuit cautions that substantial evidence is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)); *see Cotter v. Harris* (*Cotter I*), 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record."). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Baker v. Colvin*, No. 12-7251, 2014 WL 2652938, at *4 (D.N.J. June 13,

2014) (citing *Schonewolf*, 972 F. Supp. at 284–85).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [their] analysis," the decision must nevertheless contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter I*, 642 F.2d at 705; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence." (internal citation omitted)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris* (*Cotter II*), 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter I*, 642 F.2d at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Schonewolf*, 972 F. Supp. at 284–85 (quoting *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119–20; *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. ex rel. Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22 (citation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B. Sequential Evaluation Process**

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months and is eligible for benefits. *Id*. § 404.1509.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e)–(f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. DISCUSSION

### A. The ALJ's Five-Step Sequential Evaluation Process

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 17, 2020, the alleged onset date and the date of the decision. (Admin. R. at 20.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: vertiginous syndrome and other disorder of the vestibular system and hearing loss in the left ear. (*Id.*) The ALJ stated medical reports in evidence confirmed the above-noted diagnoses and documented Plaintiff's complaints associated with vertiginous syndrome and other disorders of

the vestibular system and hearing loss in the left ear. (*Id.* at 21.)

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 19.)

At step four, the ALJ determined the following RFC,

> After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light a full range of work at all exertional levels but with the following nonexertional limitations: she can frequently stoop, kneel, crouch, and crawl; she can occasionally balance and climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to loud noise; she must avoid exposure to hazardous conditions such as unprotected heights and dangerous machinery; and she can perform no driving duties.

(*Id.* at 20.)

The ALJ found Plaintiff capable of performing past relevant work as a data entry clerk and that "[t]his work does not generally require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.* at 23.)

At step five, relying on the VE's testimony, the ALJ found that Plaintiff would be able to perform the requirements of representative occupations such as: Hand Packager (DOT # 920.587-018 78,465); Package Sealer (DOT# 920.685-074 54,815); and Laboratory Cleaner (DOT # 381.687-022 27,397). (*Id.* at 24.)

**B. Issues on Appeal**

Plaintiff argues that the ALJ erred in step three by failing to find Plaintiff was *per se* disabled. (*See* Pl.'s Moving Br. at 12–17, ECF No. 11.) According to Plaintiff, the ALJ determined Plaintiff "experienced disabling symptoms relatable to her vertigo disorder but concluded that those symptoms could be remediated by treatment." (*Id.* at 14.) Yet Plaintiff asserts the ALJ incorrectly concluded Plaintiff failed to comply with her prescribed treatment. (*Id.* at 14–15.) In

Plaintiff's telling, before drawing a negative inference from a claimant's perceived failure to pursue treatment, there must be some indication that the proposed therapy would restore function and the ability to perform substantial and gainful activity. (*Id.* at 14 (citing 20 C.F.R. § 404.1530(a)).) Plaintiff also contends the ALJ must ascertain whether Plaintiff had good cause for not seeking treatment believed to remediate her condition. (*Id.* at 15 (citing 20 C.F.R. § 404.1530(b)).)

Plaintiff claims she engaged in physical therapy and occupational therapy in December 2019, and January 2020, but did not respond to treatments. (*See* Admin. R. at 609–20.) Plaintiff points out that at the time, doctors noted certain head movements provoked dizziness and shaky vision. (*Id.* at 615, 619.) Moreover, despite ongoing treatment, Plaintiff continued to experience dizziness and vision limitations. (*Id.* at 609–10.) Plaintiff cites to Dr. Jed Kwalter, who specifically noted that Plaintiff engaged in this therapy but was "without improvement" following the treatment. (*See* Pl.'s Moving Br. at 17; Admin. R. at 529.) Plaintiff argues that SSA policy permits an adjudicator to discount disabling limitations where the individual fails to follow prescribed treatment expected to restore functioning, citing to 20 C.F.R. § 404.1530(a). (Pl.'s Moving Br. at 14.) Plaintiff further contends that SSA policy provides that a claimant must follow prescribed treatment "if the treatment is expected to restore your ability to work." (*Id.*) Plaintiff asserts that, even where an individual does not follow prescribed medical treatment expected to restore the ability to work, benefits may nonetheless be payable where the individual demonstrates "good reasons," for not following treatment, which can range from religious objections, repeat surgery where previous surgery was unsuccessful, where the magnitude or unusual nature is very risky, or where the purpose treatment involves amputation of an extremity, citing 20 C.F.R. § 404.1530(a). (*Id.*)

Here, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*See e.g.*, Admin. R. at 23.)

Plaintiff contends that the ALJ did not meet his obligation to provide specific and articulate reasons when discounting subjective complaints, i.e., which evidence he has rejected and which he is relying on as the basis for his finding. *See Cotter I*, 642 F.2d at 705–06; *see also* S.S.R. 96-7P, 1996 WL 374186, at *4 (Jul. 2, 1996) ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."). Plaintiff argues that this explanation provides a basis on which to assess whether "significant probative evidence was not credited or [was] simply ignored." (Pl.'s Moving Br. at 13 (alteration in original) (quoting *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 433 (3d Cir. 1999)).)

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. R. at 20.) The ALJ further found that Plaintiff's "documented symptoms and limitations are reasonably accommodated by the restrictions set forth in the above-mentioned residual functional capacity. Specifically, the totality of the evidence is consistent with the capacity to perform work at all exertional levels with the limitations described above." (*Id.* at 21.) The ALJ supported this finding, "first and foremost by the medical record, which demonstrates that since the alleged onset date, [Plaintiff's] symptoms have been minimally treated. Furthermore, *medical records show that with regular treatment, [Plaintiff] is expected to experience increased functionality*." (*Id.* (emphasis added).)

With respect to Plaintiff's dizziness and hearing loss, the ALJ referenced April 2021 treatment records, which show that after complaining of dizziness and associated symptoms, Plaintiff was referred for a physical therapy evaluation. (*Id.*) The ALJ further noted the record does not show Plaintiff ever attended any further sessions. (*Id.*) Also, at a separate doctor's appointment one month later in May 2021, Plaintiff denied experiencing any vertigo while seeking COVID screening in anticipation of an international flight. (*Id.*) At this same appointment, Plaintiff was noted to have intact hearing to conversational voice in both ears (*Id.*) The ALJ further noted that "the record shows *no further treatment for this impairment until some [seven] months later, in November 2021*, at which time [Plaintiff] visited the otolaryngologist, where she was noted to have clear ears and intact tympanic membranes." (*Id.* (emphasis added).) The otolaryngologist did not provide new treatment for Plaintiff's symptoms, but instead advised Plaintiff to keep her ears dry and return for a recheck in six months. (*Id.*) The ALJ notes, "*[a]gain, the record demonstrates no follow up at that time*. Instead, the record demonstrates that [Plaintiff] waited *more than a year* to return to the otolaryngologist in January 2023." (*Id.* (emphasis added).) At that appointment, Plaintiff "was referred for rotary chair testing." (*Id.*)

The ALJ noted that during rotational chair testing in January 2023, Plaintiff exhibited some abnormalities with respect to her balance which could be effectively addressed with vestibular rehabilitation therapy. (*Id.*) Plaintiff started vestibular rehabilitation therapy in April 2021, but never completed it. (*Id.*) The ALJ found "*this strongly suggests that [Plaintiff's] symptoms could be effectively controlled were she compliant with that prescribed treatment. Notably, however, the record does not show any further treatment for [Plaintiff's] impairments since that time*." (*Id.* (emphasis added).)

The ALJ concluded that,

> *[G]iven the minimal treatment documented in the record, despite repeated recommendations that [Plaintiff] attend vestibular therapy*, I find that [Plaintiff's] maximum capacity allows her to perform work at all exertional levels with frequent postural performance, with the exception of balancing and climbing ramps/stairs, which she can occasionally do, and climbing ladders, ropes, or scaffolds, which she can never do. Given the longstanding nature of [Plaintiff's] vertiginous syndrome, I further find that she must avoid exposure to hazardous conditions such as unprotected heights and dangerous machinery and can perform no driving duties.

(*Id.* at 21–22 (emphasis added).)

The ALJ further noted,

> [W]hile an audiometry test performed in March shows conductive hearing loss in left ear but excellent word discrimination in both ears, [Plaintiff] was able to attend a telephone hearing in this matter without noted difficulty. In addition, [Plaintiff] has noted that with tube placement in the ear, her "hearing is better," and she experiences discomfort in the ear only with loud noises. I therefore find that [Plaintiff] must avoid concentrated exposure to loud noise as well.

(*Id.* at 22.)[4]

The ALJ referenced reports of three state medical consultants, each of whom separately assessed Plaintiff as having "no exertional limitations and opined that she can frequently perform all postural movements, with the exception of balancing and climbing ramps/stairs, which she can occasionally do, and climbing ladders, ropes, or scaffolds, which she can never do." (*Id.*) The ALJ found those assessments "collectively persuasive, as they are mutually consistent and well-supported by the medical record, which demonstrates that the claimant's impairments have been minimally treated during the relevant period." (*Id.*)

---

[4] "[S]poradic and transitory activities cannot be used to show an ability to engage in substantial gainful activity." *Fargnoli*, 247 F.3d at 40 n.5; *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting the "critical differences between" daily living activities and full-time job activities "are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer.") Accordingly, here, the Court does not view the ALJ's assessment of Plaintiff's ability "to attend a telephone hearing in this matter without noted difficulty" as substantial evidence relied upon to support a finding as to Plaintiff's hearing ability. (Admin. R. at 22.) The Court further notes, however, that the ALJ also referenced medical evidence, i.e., an audiometry test performed in March showing "conductive hearing loss in the left ear but excellent word discrimination in both ears," and Plaintiff's notation that with tube placement in the ear, her "hearing is better," and she experiences discomfort in the ear only with loud noises. (*Id.*)

Plaintiff's otolaryngologist, Dr. Laura Downey ("Downey"), opined that Plaintiff "is unable to work at heights, is unable to operate a motor vehicle, cannot work with power machines, requires extra supervision and needs hourly breaks of [thirty] minutes to accommodate her symptoms." (*Id.*) Downey further opined that Plaintiff "is expected to be off-task at least 25% of the regular workday in addition to regular breaks and is expected to have at least four unscheduled absences each month." (*Id.*) The ALJ was only partially persuaded by Downey's assessment, stating that,

> [W]hile the record certainly demonstrates that [Plaintiff] should avoid unprotected heights, dangerous machinery, and operating a motor vehicle, there is simply no support in the record for her need for regular breaks each hour and four unscheduled absences each month, *given that her impairments have remained untreated*. I note, too, that Dr. Downey saw [Plaintiff] on only three occasions during the relevant period, during which she advised [Plaintiff] to return every six months. For this separate and additional reason, I do not find this assessment to be particularly persuasive.

(*Id.* (emphasis added).)

A fourth state medical consultant, Dr. Tarpinian ("Tarpinian"), opined that Plaintiff is "limited to work of medium exertion with frequent postural performance, except for climbing ramps or stairs, which she can occasionally do, and climbing ladders, ropes, or scaffolds, which she can never do." (*Id.*) Tarpinian further opined Plaintiff "should avoid concentrated exposure to temperature extremes, wetness, humidity, and respiratory irritants and should avoid all exposure to workplace hazards yet can have unlimited exposure to noise. (*Id.*) The ALJ, largely unpersuaded by Tarpinian's assessment, stated,

> While the record certainly demonstrates that [Plaintiff] can only occasionally climb ramps or stairs and can never climb ladders, ropes, or scaffolds, her vertigo symptoms certainly demonstrate that she can only occasionally balance. Furthermore, there is no basis for any exertional limitations for [Plaintiff], as the record shows no complaints or observations pertaining to her ability to lift, carry, stand, or sit. Finally, Dr. Tarpinian's assessment that [Plaintiff] must avoid concentrated exposure to temperature extremes, wetness, humidity, and respiratory

> irritants has no factual basis in the record; conversely, his assessment that [Plaintiff] can have unlimited exposure to noise is directly contradicted by medical records showing that she experiences discomfort in the left ear with loud noises.

(*Id.* at 23.)

The ALJ found that Plaintiff's assertions that her impairments prevent her from performing any type of work on a sustained, consistent basis were "directly contradicted by the persuasive medical opinion evidence of record and inconsistent with treatment records showing that [Plaintiff's] symptoms have been managed with conservative treatment." (*Id.*)

It is Plaintiff's burden to prove disability. 20 C.F.R. § 404.1512. Plaintiff bears the burden of proof at steps one through four of the sequential evaluation process, including the RFC determination. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020) ("[C]laimant bears the burden of establishing her RFC . . . ."). Plaintiff's description of her symptoms, however, standing alone, is never sufficient to establish an impairment or disability. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) ("[A]n ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). Despite objective evidence of record that may show a medically determinable impairment, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009); *see also* 20 C.F.R. § 404.1521. Rather, an impairment must be accompanied by functional limitations severe enough to preclude a claimant from working. *See Jones v. Sullivan*, 954 F.2d 125, 128–29 (3d Cir. 1991). An individual is not required to be symptom-free or experiencing no discomfort to perform work. *See Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

It is true, as Plaintiff asserts, that the ALJ referred to evidence of Plaintiff's noncompliance

in his findings. However, a denial of benefits for failure to follow a prescribed treatment plan may only be issued after the ALJ finds a disabling impairment that precludes engaging in any substantial activity, a finding that the ALJ did not make here. *See Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 375 (3d Cir. 2009). An ALJ may find that an individual has failed to follow prescribed treatment only if all three of the following conditions exist:

> 1. The individual would otherwise be entitled to benefits based on disability or eligible for blindness benefits under titles II or XVI of the Act;
>
> 2. [E]vidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based; and
>
> 3. [E]vidence that the individual did not follow the prescribed treatment. If all three conditions exist, we will determine whether the individual failed to follow prescribed treatment, as explained below.

SSR 18-3P, 2018 WL 4945641, at *2–3 (Oct. 2, 2018).[5]

In contrast to the definition of "noncompliance" used in the SSRs, an ALJ may also use evidence of a claimant's failure to take prescribed medication as a factor in analyzing a claimant's credibility. In *Vega*, the Third Circuit has found this use of the term "noncompliance" to be appropriate, noting:

> [I]t was not Vega's noncompliance with her treatment that was the basis for the denial of benefits; rather, it was her residual functional capacity to return to sedentary work. Viewed in the context of the ALJ's findings as a whole, his reference to Vega's noncompliance shows *that he treated it as a factor in analyzing the credibility of Vega's testimony*. Because an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good

[5] Although Social Security Regulations ("SSR") do not have the same force and effect as law, they are binding on the SSA in accordance with 20 CFR § 402.35(b)(1) and are binding as precedents in adjudicating cases. *Id.*

"There are two instances when [an ALJ] will not make a failure to follow prescribed treatment determination at step 3 of the sequential evaluation process, even if there is evidence that an individual did not follow prescribed treatment." *Id.* at *7. First, if the ALJ "find[s] the individual disabled based on a listing that requires only the presence of laboratory findings." *Id.* If so, "treatment would have no effect on the disability determination or decision." *Id.* Second, if the ALJ finds the "individual is disabled based on a listed impairment(s) which requires [the ALJ] to consider whether the individual was following that specific treatment as part of the required listing analysis." *Id.* In either case, the ALJ "will find the individual is disabled without making a failure to follow prescribed treatment determination." *Id.*

reason, *see* SSR 96–7p, this was not improper.

358 F. App'x at 375 (emphasis added).

Here, the ALJ did not deny benefits to Plaintiff because she did not comply with her treatment; it was because of her RFC to return to sedentary work. Viewed in the context of the ALJ's findings, his reference to Plaintiff's noncompliance shows he treated it as a *factor* in analyzing the credibility of Plaintiff's testimony. Because an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason, *see* SSR 96–7p, this was not improper, *see Vega*, 358 F. App'x at 375.

A review of the ALJ's findings shows that he listed the symptoms considered, evaluated those symptoms in light of Plaintiff's testimony and the medical evidence, and found residual functional capacity to perform light a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff can frequently stoop, kneel, crouch, and crawl; she can occasionally balance and climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to loud noise; she must avoid exposure to hazardous conditions such as unprotected heights and dangerous machinery; and she can perform no driving duties. (Admin. R. at 20.) SSR 96–8p requires ALJs to provide a "narrative discussion describing how the evidence supports each conclusion." The ALJ's findings met this standard. *See Vega*, 358 F. App'x at 375–76.

The revised regulations set out a "reasonable articulation" standard for evaluating opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017); 20 C.F.R. § 404.1520c (setting forth articulation process for evaluating evidence). The decision should allow a reviewing court "to trace the path of the adjudicator's reasoning," but need not explain how each piece of evidence was considered. *Revisions to Rules*

*Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5858.[6]

The ALJ's fact-finding is subject to a deferential standard of review. *Biestek*, 587 U.S. at 103. The RFC is an administrative finding, not a medical opinion, which the ALJ formulates exclusively based on the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). To the extent an ALJ finds some of a claimant's limitations unsupported, the ALJ may exclude them from the RFC assessment. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) ("[T]he ALJ need only include in the RFC those limitations which he finds to be credible.").

Moreover, the ALJ is given great discretion in evaluating a claimant's subjective complaints, and his findings are entitled to great deference. *See Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014). It is the ALJ who "has seen the hearing up close." *Biestek*, 587 U.S. at 108. Consequently, the ALJ may discount a claimant's subjective complaints that are unsupported by the evidence. *See* 20 C.F.R. § 404.1529(c)(4). So long as substantial evidence supports the ALJ's conclusion, the Court should afford it "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App' x 183, 189 (3d Cir. 2007). The ALJ's credibility determination has thus been described as "virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App' x 678, 681 (3d Cir. 2015).

Accordingly, the ALJ's articulation requirements are not onerous. To facilitate substantial

[6] Under the "reasonable articulation" standard, an ALJ considers medical opinions when assessing the RFC, but will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Rather, the ALJ assesses the persuasiveness of medical opinions, and in doing so, need only explain how she considered the "most important" factors of consistency and supportability. 20 C.F.R. § 404.1520c(b)(2)–(3). In addressing a medical opinion, the ALJ "may" comment on other factors, but generally has no obligation to do so absent special circumstances, which do not exist here. 20 C.F.R. § 404.1520c(b)(2)–(3). Relevant here, "supportability" is the extent that a medical source presents "relevant objective medical evidence and . . . explanation" that supports the medical opinion; and "consistency" is the extent to which the medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(1)–(2).

evidence review, the Supreme Court provided that an agency's decision need not be "elaborate or even sophisticated." *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 302 (2015). Instead, "a sentence or short paragraph would probably suffice." *Cotter II*, 650 F.2d at 482. Consistent with these principles, the Third Circuit recently held that the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor," and may "weave [their discussion of] supportability and consistency throughout [his or] her analysis." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Moreover, the ALJ need not accept every part of a medical opinion they find "persuasive." *See Irwin v. Comm'r of Soc. Sec.*, No. 19-5108, 2020 WL 1888958 at *3 (E.D. Pa. Apr. 16, 2020) (citing *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014)); 20 C.F.R. § 404.1520c(a); *see also Binner v. Kijakazi*, No. 22-122, 2023 WL 35328, at *11 (M.D. Pa. Jan. 4, 2023) ("[S]imply finding an opinion persuasive does not mean that the ALJ must accept the persuasive medical opinion wholesale").

In determining whether a claimant is disabled under the SSA, ALJs must perform a five-step, sequential evaluation. 20 C.F.R § 404.1520. If the claimant is engaged in substantial gainful activity, the claim will be denied. *Vega*, 358 F. App'x at 375 (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000)). Similarly, if the claimant fails to show that her disabilities are severe, she is ineligible for benefits. *Id.* The ALJ followed the proper five-step procedure in the disability analysis, and his finding that Plaintiff was able to continue substantial gainful activity, which is the proper legal standard, is supported by the record. *Id.* at 376.

Here, the ALJ based his decision on "more than a mere scintilla" of evidence, enough to meet the substantial evidence standard. *See Biestek*, 587 U.S. at 103; *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record

provides substantial support for that decision."). To override the agency's factual finding, it is not enough that Plaintiff points to evidence that "*supports*" a contrary conclusion: the evidence must "*compel*[]" it. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis original). Plaintiff has not identified any evidence compelling a contrary result. Accordingly, here, remand or reversal is not warranted.

## IV. <u>CONCLUSION</u>

For these reasons, the Court **AFFIRMS** the Commissioner's decision. The Clerk of Court is hereby directed to **CLOSE** this matter.

**IT IS SO ORDERED.**

**DATED: 8/3/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**